# FRIER LEVITT

A T T O R N E Y S   A T   L A W

Jonathan E. Levitt, Esq.
Attorney ID No. 209217
84 Bloomfield Avenue
Pine Brook, NJ 07058
(973) 618-1660
Attorneys for Plaintiff, *Community Oncology Alliance, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMUNITY ONCOLOGY ALLIANCE, INC.<br>    1225 New York Avenue N.W. #600,<br>    Washington, D.C. 20005,<br><br>                            Plaintiff,<br>    v.<br><br>U.S. DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES<br>    200 Independent Avenue, SW<br>    Washington, D.C. 20201, and<br><br>U.S. CENTERS FOR MEDICARE AND<br>MEDICAID SERVICES,<br>    7500 Security Boulevard,<br>    Baltimore, MD 21244,<br><br>                            Defendants. | No.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

1. This is an action under the Freedom of Information Act, 5 U.S.C. § 552, ("FOIA") for injunctive and other appropriate relief and seeking the disclosure of agency records improperly withheld from nonprofit organization Community Oncology Alliance, Inc. ("COA" or "Plaintiff") by Defendant United States Health and Human Services ("HHS") and its component U.S. Centers for Medicare and Medicaid Services ("CMS") (collectively, "Defendants").

### Jurisdiction and Venue

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

1

3. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

4. Plaintiff Community Oncology Alliance Inc. is a corporation incorporated under the laws of Tennessee and has a principal place of business located at 1225 New York Avenue, N.W. #600, Washington, D.C. 20005. COA is nonprofit organization dedicated to advocating for independent community oncology practices and, most importantly, the patients they serve. COA is the only organization dedicated solely to independent community oncology practices where the majority of Americans with cancer are treated. COA's mission is to ensure that cancer patients receive quality, affordable, and accessible cancer care in their own communities. The vitality of the community cancer care delivery system is critical to continue the steady success in combating the disease through earlier detection, diagnosis, and treatment. COA regularly informs the public on matters of broad public concern, including the impact of pharmacy benefit managers ("PBMs") on community oncology practices and cancer care, through speaking engagements and various publications.

5. Defendant HHS is an agency of the Executive Branch of the United States Government within the meaning of 5 U.S.C. § 552(f)(1) and includes component entity CMS.

6. Defendant CMS is the federal agency within HHS charged with the administration of the Medicare program and works with state governments to administer the Medicaid program.

7. Defendants CMS and HHS are in possession and control over the records Plaintiff seeks under the FOIA.

## Facts Common to All Counts

**I. Background of the In Office Ancillary Services ("IOAS") Exception to the Stark Law and the Frequently Asked Question ("FAQ") Issued by CMS Interpreting the IOAS Exception's Location Requirement**

8.      Through a series of legislative enactments commonly referred to as the "Stark Law," physicians are prohibited from making referrals for designated health services ("DHS") payable by the Medicare program to entities in which the physician has a financial stake, unless an exception applies. See 42 U.S.C. § 1395nn, et seq.

9.      Pursuant to the Stark Law, a physician may not refer any DHS, such as an outpatient prescription drug, to an individual or entity with whom the physician has a financial relationship, unless an exception applies. See 42 U.S.C. § 1395nn. Failure to abide by the Stark Law, a strict liability statute, can result in devastating civil liability, which may include fines, penalties, trebled damages, and exclusion from participation in Federal Health care programs. Id.; see also U.S. ex rel. Riedel v. Boston Heart Diagnostics Corporation, 322 F.Supp.3d 48, 66 (D.D.C. 2018) (noting how a Stark law violation may serve as a predicate for a False Claims Act action).

10.     Physicians who engage in in-office physician dispensing or dispense via practice-owned pharmacies may, in the absence of an applicable exception, trigger Stark law liability by virtue of their financial relationship in either the practice or the pharmacy to which the prescription drug order is referred. In such circumstances, a Stark exception must be met in order to avoid liability thereunder. One widely-employed Stark Law exception applied under the above-circumstances is the so-called In-Office Ancillary Services or IOAS exception, codified under 42 C.F.R. § 411.355(b), which requires that certain supervisory, billing, and location requirements be met.

11.     The IOAS exception provides that the "location where [a] service is furnished" is generally in the same building as the physician's office (42 C.F.R. § 411.355(b)(2)), and additionally and distinctly provided that a "designated health service is 'furnished' for purposes of this paragraph (b) in the location where the service is actually performed upon a patient or where an item is dispensed to a patient in a manner that is sufficient to meet the applicable Medicare payment and coverage rules." 42 C.F.R. § 411.355(b)(5).

12. In 2020, shortly after the onset of the COVID-19 Public Health Emergency ("PHE"), CMS suspended enforcement of (or "waived") the "location requirement" for purposes of 42 C.F.R. §411.355(b)(2) pursuant to certain published waivers (the "COVID Waivers"). The COVID Waivers terminated with the expiration of the PHE, effective May 11, 2023.

13. In September 2021, during the PHE, CMS posted a FAQ in response to a COVID Waiver-related question concerning where an item may be considered "furnished" for purposes of the 411.355(b)(2) location requirement.[1]

14. In the FAQ, in response to whether durable medical equipment can be mailed to a beneficiary's home, CMS acknowledged the regulatory text of 411.355(b)(5), stating "services are considered 'furnished' in the location where the service is actually performed upon a patient or where an item is 'dispensed to a patient in a manner that is sufficient to meet Medicare billing and coverage rules.'" The FAQ goes on to state that the exception for in-office ancillary services occurs "only when a patient directly receives the item in the physician's office **and** in a manner that is sufficient to meet applicable Medicare billing and coverage rules. (emphasis added) See Id. The language of the FAQ pertaining to the location requirement differs from the regulation language in this regard.

15. The FAQ further states, in pertinent part, that:

Our policy has not changed since the effective date of Phase I final rule. The "location requirement" at 42 C.F.R. §411.355(b)(2) requires that the patient receive the item in the physician's office. Put another way, items that are designated health services to which the exception is applicable, such as intermittent catheters (which are prosthetic devices), fall within the scope of the exception for in-office ancillary services only when a patient directly receives the item in the physician's office and in a manner that is sufficient to meet applicable Medicare billing and coverage rules. Id. at 9.

---

[1] See Center for Medicare & Medicaid Services Physician Self-Referral Law Frequently Asked Questions, CMS (Sept. 20, 2021), available at https://www.cms.gov/Medicare/Fraud-and-Abuse/PhysicianSelfReferral/Downloads/FAQs-Physician-Self-Referral-Law.pdf (last accessed Aug. 1, 2024) at 8-9.

16. Because the FAQ impacts the ability of physicians, such as oncologists, to meet the IOAS Exception in certain circumstances, i.e., the mailing of outpatient drugs, Plaintiff filed two FOIA requests with CMS, under CMS FOIA tracking numbers 103120237039 and 103120237039, to obtain written communications between the agency and third parties, including but not limited to PBMs. These requests were constructively denied by CMS as described more fully below.

**II. COA Files a Freedom of Information Act ("FOIA") Request to CMS, under Control Number 103120237039, Requesting Written Communications Between Certain Custodians of Records at CMS and Third Parties Regarding the Development of the FAQ Pertaining to the IOAS Exception Location Requirement and CMS Constructively Denied the FOIA Request by Failing to Render a Determination for Over Eight (8) Months.**

17. On or about October 27, 2023, COA submitted a FOIA request (the "First FOIA Request") to CMS. A copy of the First FOIA Request is attached as **Exhibit A** and is expressly incorporated herein. In the First FOIA Request, COA requested records containing written correspondence, i.e., letters and emails ("Written Communications") CMS and third-parties, including but not limited to pharmacy benefit managers ("PBMs"), the Pharmaceutical Care Management Association, and Prescription Drug Plans, "regarding the development of the FAQ pertaining to the IOAS exception's location requirement, specifically guidance on "furnished" for purposes of the "location requirement" of the exception for in-office ancillary services at 42 C.F.R. §411.355(b)(2), from January 1, 2016 to the present." See **Exhibit A at** 1.

18. In the First FOIA Request, COA also requested records regarding the statement by CMS that it "will closely monitor patient complaints to watch for any issues affecting patient access" as set forth in in its May 19, 2023, Frequently Asked Questions entitled "CMS Waivers, Flexibilities, and the End of the COVID-19 Public Health Emergency" in response to Question #33, including all documents relating to how CMS is closely monitoring patient complaints and determining the impact to patient access from January 31, 2021 to the present. See **Exhibit A at** 2.

19. On or about November 3, 2023, CMS requested a clarification to the First FOIA request ("Clarification Request").

20. On or about November 16, 2023, Requestor sent a response to the Clarification Letter ("Response to Clarification Request"). A copy of the Clarification Request and the Response to the Clarification Request is attached as **Exhibit B** and is expressly incorporated herein.

21. On November 17, 2023, CMS confirmed receipt of the First FOIA Request in an acknowledgement letter (the "Acknowledgment Letter"). A copy of the Acknowledgement Letter is attached as **Exhibit C** and is expressly incorporated herein. In the Acknowledgement Letter, CMS assigned the First FOIA Request a tracking identification number, Control Number 103120237039, and stated that, given the high volume of requests, the actual processing time will depend on the complexity of the FOIA request and the "following unusual circumstances, as defined by 5 USC § 552(a)(6), may affect our ability to fulfill a FOIA request within 20 business days . . . (1) the request requires us to search for and collect records from multiple components and/or field offices; (2) the request involves a voluminous number of records that must be located, compiled, transferred to this office, and reviewed. See **Exhibit C** at 1. Defendant also directed COA to periodically check on the status of the processing of the First FOIA Request on its website. See **Exhibit C** at 1.

22. Upon information and belief, as discussed more fully below, in the eight (8) months that followed the issuance of the Acknowledgement Letter, Defendants ceased processing the First FOIA Request, as CMS did not complete a search for the First FOIA Request or otherwise render a determination on the First FOIA Request.

23. On or about December 27, 2023, COA requested a status update through counsel regarding the processing of the First FOIA Request because the online FOIA tracking portal indicated an "undetermined" anticipated response date for the FOIA request. A copy of the

6

December 27, 2023, e-mail, and CMS' response e-mail, dated January 2, 2024, are attached as **Exhibit D** and are expressly incorporated herein.

24. On or about January 2, 2024, CMS Government Information Specialist Kenyatta Stringfellow stated that it anticipated completion of the search at the end of the month ("January Status Update"). See **Exhibit D**.

25. In the six (6) weeks following the January Status Update, Defendants did not provide any further updates or otherwise render a determination on the First FOIA Request.

26. On or about February 15, 2024, COA requested a status update through counsel regarding processing of the First FOIA Request (the "February 15, 2024, E-mail"). A copy of the February 15, 2024, E-mail is attached as **Exhibit E** and expressly incorporated herein. As of February 15, 2024, the CMS website still indicated an "undetermined" date for a projected response. See **Exhibit E**.

27. On or about February 29, 2024, the CMS website still indicated an "undetermined" date of response. A copy of the CMS status for the First FOIA Request as of February 29, 2024, is attached as **Exhibit F** and expressly incorporated herein.

28. On or about March 1, 2024, COA submitted an appeal to Defendants for constructive denial of the First FOIA Request ("Administrative Appeal"). A copy of the Administrative Appeal is attached as **Exhibit G** and expressly incorporated herein.

29. On or about March 4, 2024, CMS acknowledged receipt of appeal and stated that it would respond to the Administrative Appeal "as expeditiously as possible, consistent with Department of Health and Human Services FOIA rules set forth at 45 CFR Part 5" ("Appeal Acknowledgement Letter"). A copy of the Appeal Acknowledgment Letter is attached as **Exhibit H** and expressly incorporated herein.

30. On or about, July 23, 2024, since Defendants had not issued a determination on the First FOIA Request or Administrative Appeal, COA submitted a clarification of requestor, to demonstrate that the requested records were not for a commercial use, as well as a fee waiver request ("Fee Waiver Request"). A copy of the Fee Waiver Request is attached as **Exhibit I** and expressly incorporated herein.

31. To date, Defendants have not acknowledged receipt of the Fee Waiver Request or otherwise issued a determination regarding the Fee Waiver Request.

III. **COA Files a Second FOIA Request to CMS, under Control Number 121920237005, Requesting Written Communications Between Additional Custodians of Records at CMS and Third Parties Regarding the Development of the FAQ Pertaining to the IOAS Exception Location Requirement and CMS Constructively Denied the FOIA Request by Failing to Render a Determination for Over Seven (7) Months.**

32. On or about December 14, 2023, COA submitted a second FOIA request to CMS requesting Written Communications between additional custodians of records at CMS and third parties regarding the FAQ (the "Second FOIA Request"). A copy of the Second FOIA Request is attached as **Exhibit J** and is expressly incorporated herein.

33. On or about December 21, 2023, CMS confirmed receipt of the FOIA Request in an acknowledgement letter (the "Second Acknowledgment Letter"). A copy of the Second Acknowledgement Letter is attached as **Exhibit K** and is expressly incorporated herein. In the Second Acknowledgement Letter, CMS assigned the FOIA Request a tracking identification number, Control Number 121920237005, and stated that, given the high volume of requests, the actual processing time will depend on the complexity of the FOIA Request and the "following unusual circumstances, as defined by 5 USC § 552(a)(6), may affect our ability to fulfill a FOIA request within 20 business days . . . (1) the request requires us to search for and collect records from multiple components and/or field offices; (2) the request involves a voluminous number of records that must

8

be located, compiled, transferred to this office, and reviewed. See **Exhibit K** at 1. Defendant also directed COA to periodically check the status of the processing of the FOIA Request on its website. See **Exhibit K** at 1.

34.     Upon information and belief, as discussed more fully below, in the seven (7) months that followed the issuance of the Second Acknowledgement Letter, Defendants ceased processing the Second FOIA Request as CMS did not complete a search for the Second FOIA Request or otherwise render a determination on the Second FOIA Request.

35.     On or about January 22, 2024, COA requested a status update through counsel regarding the processing of the Second FOIA Request because the online FOIA tracking portal indicated an "undetermined" anticipated response date for the FOIA request. A copy of the January 22, 2024, e-mail, and January 23, 2024, CMS response e-mail, is attached as **Exhibit L** and is expressly incorporated herein.

36.     On or about January 23, 2024, CMS Government Information Specialist stated in pertinent part that "your request is pending search for the requested documents" and "[w]e have sent your request to several CMS program offices to ensure an adequate search is completed" ("CMS Status Response"). See **Exhibit L**.

37.     Thereafter, Plaintiff, through counsel, submitted multiple requests for a status update on the processing of the Second FOIA Request via e-mail, specifically on or about February 14, 2024, and March 1, 2024. A copy of the February 14, 2024, March 1, 2024, and March 5, 2024, e-mails are attached as **Exhibit M** and are expressly incorporated herein.

38.     On or about March 5, 2024, CMS Government Information Specialist, Kenyatta Stringfellow, responded that the Second FOIA Request was still pending a search. See **Exhibit M**.

39. On or about March 5, 2024, COA, through counsel, requested an estimated timeframe to produce records responsive to the Second FOIA Request via e-mail to CMS. See Exhibit **M**.

40. On or about March 8, 2024, the CMS website still indicated an "undetermined" date of response for the Second FOIA Request. A copy of the CMS status the Second FOIA Request as of March 8, 2024, is attached as **Exhibit N,** and expressly incorporated herein.

41. On or about March 8, 2024, COA submitted an appeal to Defendants for constructive denial of the Second FOIA Request ("Second Administrative Appeal"). A copy of the Second Administrative Appeal is attached as **Exhibit O** and expressly incorporated herein.

42. On or about March 8, 2024, CMS acknowledged receipt of appeal and stated that it would respond to the Second Administrative Appeal "as expeditiously as possible, consistent with Department of Health and Human Services FOIA rules set forth at 45 CFR Part 5" ("Second Administrative Appeal Acknowledgement Letter"). A copy of the Second Administrative Appeal Acknowledgment Letter is attached as **Exhibit P** and is expressly incorporated herein.

43. On or about March 8, 2024, after COA submitted Administrative Appeal, CMS Government Information Specialist Kenyetta Stringfellow stated that the Second FOIA Request is still pending a search and that she had "contacted the components that are conducting the search for more information and will provide an update when I receive it." A copy of the March 8, 2024, e-mail response is attached as **Exhibit Q** and expressly incorporated herein. No subsequent update on the search was ever provided by CMS following this e-mail.

44. On or about June 21, 2024, COA, through counsel, submitted a status request regarding processing of the Second Administrative Appeal to Desiree Gaynor, Acting Director, Division of FOIA Analysis – A, via e-mail. A copy of the June 21, 2024, status request e-mail and delivery confirmation are attached as **Exhibit R** and expressly incorporated herein.

45. Defendants did not respond to the June 21, 2024, e-mail request for a status update on the Second Administrative Appeal or otherwise issue a determination in response to the Second Administrative Appeal.

46. On or about, July 23, 2024, since Defendants had not issued a determination on the Second FOIA Request or Second Administrative Appeal, COA submitted a clarification of requestor, to demonstrate that the requested records were not for a commercial use, as well as a fee waiver request ("Second FOIA Request Fee Waiver"). A copy of the Second FOIA Request Fee Waiver is attached as **Exhibit S** and expressly incorporated herein.

47. To date, Defendants have not acknowledged receipt of or otherwise issued a determination in response to Second FOIA Request Fee Waiver.

**IV. Plaintiff is Left with No Choice but to File Suit Because Defendants Have Not Rendered a Determination to the First FOIA Request or Second FOIA Request (collectively, the "FOIA Requests") and Defendants Refuse to Provide a Timeframe for Completion of Processing of the FOIA Requests.**

48. As set forth herein, Plaintiff sent numerous requests for information on the status of FOIA Requests, without any substantive response.

49. The delays by Defendants were not reasonably related to the processing of the FOIA Requests, as virtually no information whatsoever was given to COA from Defendants, including but not limited to the total number of responsive records, the costs associated with pulling documents, or Defendants' decision on the fee waiver requests submitted for the FOIA Requests.

50. In fact, Defendants repeatedly ignored requests by COA for a status update regarding the FOIA Requests and the administrative appeals submitted in response to Defendants' constructive denial of the FOIA Requests.

51. In the meantime, Defendants continue to process other FOIA requests submitted after the FOIA Requests described herein.

52. Moreover, upon information and belief, the records requested from Defendants, specifically e-mail communications and letters, are readily available and searchable.

53. Based on the ongoing failure of Defendants to respond to Plaintiff in a reasonable and timely manner during the past seven (7) months, COA was left with no choice but to seek judicial relief to compel the production of records responsive to the FOIA Requests.

**COUNT I**
**Production Under the FOIA**

54. Plaintiff repeats and realleges each and every allegation set forth above in Facts Common to All Counts as though set forth fully herein.

55. Plaintiff properly requested records within Defendants' control and possession in accordance with the FOIA.

56. Plaintiff has a right of access to the requested information under the FOIA, and there is no legal basis for Defendants denial of such access.

57. Defendants have wrongfully delayed and withheld the requested records from Plaintiff.

58. Defendants' delays are not "reasonably necessary to the proper processing of the particular requests." 5 U.S.C. § 552(a)(6)(B)(iii).

59. Plaintiff exhausted its administrative remedies with regard to the wrongfully withheld records.

60. Defendants' failure to conduct a reasonable search and to timely make available and to release all the documents requested by Plaintiff violates FOIA, 5 U.S.C. § 552(a)(3), 5 U.S.C. § 552(a)(6), and Defendant's corresponding regulations.

## COUNT II
**Failure to Grant Waiver of Fees**

61. Plaintiff repeats and realleges each and every allegation set forth above in Facts Common to All Counts and Count I as if set forth fully herein.

62. Defendants' failure to grant Plaintiff's waiver of fees violates FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and Defendants' corresponding regulations.

## COUNT III
**Failure to Grant Limitation of Fees**

63. Plaintiff repeats and realleges each and every allegation set forth above in Facts Common to All Counts, Count I and Count II as if set forth fully herein.

64. Defendants' failure to grant Plaintiff's waiver of fees violates FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and Defendants' corresponding regulations.

## REQUESTED RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

a. Order Defendants immediately and expeditiously to provide Plaintiff copies of the requested records;

b. Enjoin Defendants from assessing any fees against Plaintiff in relation to the processing of the FOIA Requests;

c. Enjoin Defendants from withholding records and order Defendants to disclose the requested records in their entireties and make copies available to Plaintiff;

d. Declare that Defendants' failure to disclose the records requested by Plaintiff violates the FOIA;

  e. Enter a finding that personnel employed by Defendants acted arbitrarily and capriciously in withholding public records from Plaintiff as provided in 5 U.S.C. § 552(a)(4)(F);

  f. Award Plaintiff costs and reasonable attorneys' fees in this action, as provided in 5 U.S.C. § 552(a)(4)(E); and

  g. Grant such other and further relief as may deem just and proper.

**RESPECTFULLY SUBMITTED** this 2nd day of August 2024

BY: _s/ Jonathan Levitt_
Jonathan E. Levitt, Esq.
Attorney ID No. 209217
**FRIER & LEVITT, LLC**
84 Bloomfield Avenue
Pine Brook, NJ 07058
(973) 618-1660
*Attorneys for Plaintiff, Community Oncology Alliance, Inc.*